UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

PLACIDO ROMERO PEREZ,

                     Plaintiff,          25-cv-8112 (JGK)

      - against -               MEMORANDUM OPINION
                                    AND ORDER

LADEON FRANCIS, ET AL.,
                    Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

On September 25, 2025, Petitioner Placido Romero Perez ("Romero") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking his immediate release from ICE custody. See Am. Pet. for a Writ of Habeas Corpus ("Am. Pet.") 1-2, ECF No. 8. Romero alleges that he was forcibly arrested while walking on a sidewalk by the ICE agents without explanation and detained. Id. For the reasons explained below, the petition is **granted in part and denied in part**.

## I. BACKGROUND[1]

Romero is fifty years of age. Rosen Decl. ¶ 5, ECF No. 8-1. He entered the United States in December 1995 by crossing the border from Mexico without being inspected. Cuni Decl. ¶ 3, ECF No. 21. He has resided in the United States for nearly thirty

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

years. Rosen Decl. ¶ 5. He has family in Brooklyn, including three daughters and two granddaughters, and he has worked in an Italian restaurant in New York City since 2009. Id. ¶¶ 6-8. Romero has never been convicted of any crime. Id. ¶ 20. Romero has never applied for lawful immigration status and does not have authorization to remain in the United States. Cuni Decl. ¶ 5.

On September 25, 2025, two ICE officers stopped Romero while he was walking home from work. Rosen Decl. ¶¶ 9-10. The officers asked whether he recognized two Latino men depicted in photographs. Id. ¶ 11. After Romero stated that he did not, the officers requested identification from Romero. Id. ¶¶ 11-13. When Romero declined to provide identification, the officers searched him and placed him under arrest. Id. ¶¶ 13-21. The respondent alleges that during their encounter, Romero admitted to ICE officers that he crossed the border without inspection and had no legal authorization. Cuni Decl. ¶ 4. The parties dispute whether ICE recorded the encounter that preceded the arrest. See Id. ¶ 5, n.1; Rosen Decl. ¶ 16.

Romero was then transported to 26 Federal Plaza, New York, New York. Id. ¶ 21; Cuni Decl. ¶ 5. He was assisted by a family friend in filing a pro se petition by email in this Court. Rosen Decl. ¶¶ 23-25. While Romero was in detention, ICE issued and

served Romero with a Notice to Appear ("NTA") for a hearing on October 24, 2025. Id. ¶ 41; Cuni Decl. ¶ 7.

On September 28, 2025, Romero was transferred to the Delaney Hall Detention Facility in Newark, New Jersey. Cuni Decl. ¶ 8. Romero reported that, at Delaney Hall, he received a blood-sugar check and an insulin injection for his diabetes, although he had not typically received insulin injections and had previously treated his diabetes with metformin pills. Rosen Decl. ¶¶ 61-62. On October 1, 2025, Romero was transferred to the Winn Correctional Center in Winnfield, Louisiana. Cuni Decl. ¶ 9. On October 2, 2025, Romero filed his amended petition with the assistance of pro bono counsel. See Am. Pet.

On October 24 and 31, 2025, Romero attended two master calendar hearings concerning removability under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). See ECF Nos. 27-28. Those proceedings were not bond hearings and did not address Romero's custody or the lawfulness of his detention. The next master calendar hearing is scheduled on November 13, 2025. See id.

## II. DISCUSSION

### A. The Applicable Statute

The first principal issue is whether the petitioner — who has resided in the United States for nearly thirty years — was detained under 8 U.S.C § 1225(b)(2)(A), which mandates detention

of noncitizens "seeking admission" to the country, or under
8 U.S.C. § 1126(a), which authorizes discretionary detention of
noncitizens who are "already in the country." Jennings v.
Rodriguez, 583 U.S. 281, 288-89 (2018). Detention under
§ 1225(b)(2)(A) permits only temporary parole "for urgent
humanitarian reasons or significant public benefit," and does
not provide for a bond hearing. Id. at 283. By contrast, under
§ 1226(a), the Attorney General "may release the alien on bond
of at least $1,500 . . . or conditional parole," 8 U.S.C.
§ 1226(a), and the detainee may seek review of an initial
custody determination, including bond, before an immigration
judge, 8 C.F.R. § 1236.1(d)(1).

        The respondents argue that the petitioner is detained under
8 U.S.C. § 1225(b)(2)(A) because, notwithstanding his thirty-
year presence in the United States, he remains "an applicant for
admission" who is "seeking admission" and is subject to
detention under that provision. See Opp'n Mem. 6-7, ECF No. 22
(citing DHS v. Thuraissigiam, 591 U.S. 103, 140 (2020)).
However, this construction of § 1225(b)(2)(A) is inconsistent
with the statute. Courts in this Circuit have consistently held
that § 1225(b)(2)(A) does not govern detention of noncitizens
arrested while residing in the United States; those detentions
are governed by 8 U.S.C. § 1226(a). See, e.g., Lopez Benitez v.
Francis, No. 25-cv-5937, 2025 WL 2371588, at *5 (S.D.N.Y. Aug.

13, 2025); Samb v. Joyce, No. 25-cv-6373, 2025 WL 2398831, at *3
(S.D.N.Y. Aug. 19, 2025); Munoz Materano v. Arteta, No. 25-cv-
6137, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025);
Gonzalez v. Joyce, No. 25-cv-8250, 2025 WL 2961626, at *4
(S.D.N.Y. Oct. 19, 2025); Hyppolite v. Noem, No. 25-cv-4304,
2025 WL 2829511, at *8-12 (E.D.N.Y. Oct. 6, 2025); J.U. v.
Maldonado, No. 25-cv-04836, 2025 WL 2772765, at *5-9 (E.D.N.Y.
Sept. 29, 2025).

The same reasoning applies here. Section 1225(b)(2)(A)
authorizes detention when an immigration officer determines that
an individual is (1) an applicant for admission, (2) seeking
admission, and (3) "not clearly and beyond a doubt entitled to
be admitted." 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1)
provides that "an alien present in the United States who has not
been admitted or who arrives in the United States . . . shall be
deemed . . . an applicant for admission." Id. Reading
§ 1225(b)(2)(A) to cover detention of all "applicants for
admission," regardless of whether they are seeking admission,
would render the phrase "seeking admission" surplusage and
disregard the statute's present-tense requirement, that is, the
requirement that the applicant for admission is "seeking
admission." See Lopez Benitez, 2025 WL 2371588, at *6; J.U.,
2025 WL 2772765, at *7. The respondents' interpretation would
also blur the Supreme Court's long-recognized line between

statutes governing noncitizens seeking admission at the border and those governing noncitizens already within the United States. See Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) ("It is important to note at the outset that our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality."); Jennings, 583 U.S. 281, 287-89 (2018) (explaining the distinct scopes of 8 U.S.C. §§ 1225 and 1226).

The facts in this case underscore that § 1226(a), not § 1225(b)(2)(A), governs the petitioner's detention. The petitioner has lived in the United States for thirty years, has substantial family ties here, and was arrested on a sidewalk while returning home from work — not while entering the U.S. border. Nothing in the record suggests that the petitioner was seeking admission at the time of his arrest (or had recently sought admission). The respondents' reliance on Thuraissigiam is misplaced. In that case, there was no dispute that § 1225 applied to the petitioner who was apprehended within yards of the border immediately after crossing it. 591 U.S. at 114. By contrast, the petitioner in this case was arrested far from the border after decades of residence in the United States. Accordingly, the petitioner here may only be subject to detention under § 1226(a) after a bond hearing.

6

### B. Exhaustion

"Under the doctrine of exhaustion of administrative remedies, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." Howell v. INS, 72 F.3d 288, 291 (2d Cir. 1995). "While 28 U.S.C. § 2241 does not include a statutory exhaustion requirement, district courts in this Circuit have recognized such a requirement as a prudential matter before immigration detention may be challenged in federal court by a writ of habeas corpus." Michalski v. Decker, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018).

The petitioner contends that, in light of the BIA's September 5, 2025 decision in Matter of Yajure Hurtado, 29 I.&N. Dec. 216 (B.I.A. 2025), which he reads to preclude immigration judges from hearing bond requests from similarly situated noncitizens, pursuit of a bond hearing "would be both futile and provide no genuine opportunity for adequate relief." Pet'r's Reply Mem. in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Reply") 4, ECF No. 23. That argument is unpersuasive. Yajure Hurtado rested on the premise that detention of noncitizens arrested while residing in the United States is governed by 8 U.S.C. § 1225(b)(2)(A), rather than § 1226(a). See 29 I.&N. Dec. at 228–29. As explained above, that premise is incorrect; detention in these circumstances is governed by § 1226(a). Other

7

courts in this Circuit have similarly rejected that premise in
Yajure Hurtado. See, e.g., Hyppolite, 2025 WL 2829511, at *11;
J.U., 2025 WL 2772765, at *7. Moreover, after Loper Bright, it
is the province of the courts — not the agency — to
"authoritatively interpret" the statute. Loper Bright Enters. v.
Raimondo, 603 U.S. 369, 402 (2024). Accordingly, Yajure Hurtado
does not bar Romero from obtaining a bond hearing because, under
the correct statutory framework, the petitioner's detention
falls under § 1226(a), not § 1225(b)(2)(A).

Under § 1226(a), a noncitizen is entitled to an
individualized bond hearing at the outset of detention to assess
danger and flight risk. See Jennings, 583 U.S. at 306 ("Federal
regulations provide that aliens detained under § 1226(a) receive
a bond hearing at the outset of detention."). At such a hearing,
the Government bears the burden, by clear and convincing
evidence, to show that the noncitizen is a danger to the
community or a flight risk. See, e.g., Velasco Lopez v. Decker,
978 F.3d 842, 855-56 (2d Cir. 2020); Linares Martinez v. Decker,
No. 18-cv-6527, 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018)
(collecting cases). On the present record, the petitioner's
strong family ties, stable employment, and lack of criminal
history weigh against any showing, by clear and convincing
evidence, that he is a danger to the communities or a risk of
flight.

Because the BIA precedent cannot bar the petitioner from receiving a § 1226(a) bond hearing where the Government would likely fight an uphill battle, pursuing administrative remedies cannot be futile. Indeed, the prospect that an immigration judge's bond determination could "largely scuttle[] [the petitioner's] petition," Castillo Lachapel v. Joyce, 786 F. Supp. 3d 860, 864, and potentially moot the habeas action counsels in favor of requiring prudential exhaustion "in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings," Guzman v. Joyce, 786 F. Supp. 3d 865, 870 (S.D.N.Y. 2025); see also Fontanelli as Next Friend of Bernal Garcia v. Francis, 25-cv-07715, 2025 WL 2773234, at *7-8 (S.D.N.Y. Sept. 29, 2025).[2] Accordingly, the petitioner should first exhaust his remedies through the § 1226(a) bond hearing that the Court orders before proceeding with this habeas petition.

### III. CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit.

For the foregoing reasons, the petition is **granted in part and denied in part.** The Government shall ensure that the

---

[2] Because a bond hearing before an Immigration Judge resolves this case, the Court need not reach the petitioner's constitutional arguments.

petitioner receives a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) **within seven (7) days** of this Memorandum Opinion and Order; if no hearing is held by that deadline, the Government shall immediately release the petitioner. At the hearing, the Government shall bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight. The petition is **denied** insofar as it seeks immediate release or a bond hearing before this Court. No other relief is necessary at this time.

    The Clerk is respectfully directed to close this case.


SO ORDERED.
Dated:    New York, New York
          November 6, 2025

                                    _____
                                       John G. Koeltl
                                  United States District Judge