# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

Placido Romero Perez,

*Petitioner*,

v.

LaDeon FRANCIS, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of Homeland Security; and Pamela BONDI, in her official capacity as Attorney General of the United States,

*Respondents*.

</td><td>

Case No. 25-cv-8112-JGK

</td></tr>
</table>

**PETITIONER'S EMERGENCY AMENDED MOTION TO ENFORCE
THE COURT'S NOVEMBER 6, 2025 ORDER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. i

INTRODUCTION .......................................................................................................... 1

STATEMENT OF THE CASE........................................................................................... 2

ARGUMENT ................................................................................................................. 4

    I.    Because Respondents Failed to Comply with this Court's November 6 Order, Mr. Romero Should Be Released. ........................................................................................ 4

        A.    Respondents Flagrantly Violated this Court's Order at the November 10, 2025 Bond Hearing.......................................................................................................................... 5

        B.    Respondents Again Undermined This Court's Order by Invoking an Automatic Stay of Mr. Romero's Bond Pursuant to 8 C.F.R. § 1003.19(i)(2)....................................... 5

            i.    Mr. Romero's Detention Pursuant to the Automatic Stay Provision Violates Due Process ............................................................................................................................. 7

            ii.    Respondents' Invocation of the Automatic Stay Provision is Ultra Vires .................11

            iii.    The Remedy for Respondents' Non-Compliance is Release ................................ 12

CONCLUSION.............................................................................................................. 13

**TABLE OF AUTHORITIES**

**CASES**

*Arcos v. Noem*, 4:25-cv-04599, 2025 WL 2856558 (S.D. Tex. Oct. 8, 2025)……………………..8

*Ashley v. Ridge*, 288 F.Supp.2d 662 (D.N.J. Oct. 29, 2003)………………………....……….6

*Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985) …….................……………………............4

*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024)…………………………………………….7, 8

*Chipantiza-Sisalema v. Francis*, 25 Civ. 5528 (AT), 2025 WL 1927931 (S.D.N.Y. July 13, 2025)…………………………………………………………………………………………7

*Enoh v. Sessions*, 16-CV-85(LJV), 2017 WL 2080278 (W.D.N.Y. May 15, 2017) …..............…13

*Fernandez Aguirre v. Barr*, 19-CV-7048 (VEC), 2019 WL 4511933 (S.D.N.Y. Sept. 18, 2019)..13

*Grasso v. Norton*, 520 F.2d 27 (2d Cir. 1975) ……………………….................................12

*Hamdi v. Rumsfeld,* 542 U.S. 507 (2004)……………………………………………...…….7

*Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. Jan. 16, 2019) ……...........................13

*Herrera v. Knight*, --- F.Supp.3d ---, 2025 WL 2581792 (D. Nev. Sept. 5, 2025)……………..…9

*Hyppolite v. Noem,* 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025)……….…11

*J.M.P. v. Arteta*, --- F.Supp.3d ---, 2025 WL 2984913 (S.D.N.Y. Oct. 23, 2025)..........6, 7, 8, 9, 10

*Leal-Hernandez v. Noem,* 1:25-cv- 02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025)…..12

*Mathews v. Eldridge*, 424 U.S. 319 (1976)…………………………………………..7, 8, 10, 11

*Quituizaca v. Barr*, No. 20-CV-403 (LJV), 2021 WL 6797494 (W.D.N.Y. Jan. 5, 2021).........5, 12

*Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) ……..…………………….....…2, 3, 5

*Thomas v. Searls*, 20-CV-6362-FPG, 2021 WL 358128 (W.D.N.Y. Jan. 4, 2021) ………….....…12

*Vazquez v. Feeley*, 2:25-cv-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025)…….10

*Velasco Lopez v. Decker,* 978 F.3d 842 (2d Cir. 2020)…………………………………………7

**STATUTES**

8 U.S.C. § 1225(b) …………………………………………...…………..….……1, 2, 3, 5, 8

8 U.S.C. § 1226(a)………………………………………...…………………………..*passim*

**REGULATIONS**

8 C.F.R. § 1003.19(i)(2)……………………………………….……………….…..1, 4, 5, 6

**OTHER**

The Marshall Project, Winn Correctional Center: A Curated Collection of Links,
https://www.themarshallproject.org/records/3048-winn-correctional-center (last updated July 23,
2025)……………………………………………………………………………………....8

**INTRODUCTION**

Despite an order by the Immigration Court that Petitioner Placido Romero Perez ("Mr. Romero" or "Petitioner") should be released on bond, he remains detained due to Respondents' repeated violations of this Court's order to provide Mr. Romero with a constitutionally adequate bond hearing. As Respondents have systematically failed, during two separate bond hearings, to comply with this Court's order, Mr. Romero respectfully requests that the Court enforce its Memorandum Opinion and Order dated November 6, 2025 ("Order") and order his release.

On November 10, Mr. Romero filed a Motion to Enforce after Respondents violated this Court's order by arguing for and failing to apply the correct legal standard in Mr. Romero's initial bond hearing. After Mr. Romero filed his Motion to Enforce, Respondents scheduled a second bond hearing for November 13. At the hearing on November 13, counsel for the Department of Homeland Security ("DHS") again maintained—in contravention of this Court's order—that Mr. Romero was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). The Immigration Judge, however, applied the proper standard, granting bond to Mr. Romero. However, despite having filed *zero* evidence in support of the argument that Mr. Romero should continue to remain detained, Respondents reserved for appeal and invoked the "automatic stay" provision at 8 C.F.R. § 1003.19(i)(2) barring Mr. Romero's release.

Mr. Romero now amends his Motion to Enforce as Respondents' invocation of the automatic stay to block his release has effectively subjected him to mandatory detention and denied him the hearing pursuant to 8 U.S.C. § 1226(a) ordered by this Court. As Respondents have systematically failed to comply with the terms of this Court's Order, Mr. Romero respectfully requests that the Court order his immediate release on the $6,000 bond set by the Immigration Judge.

1

**STATEMENT OF THE CASE**

On November 6, 2025, this Court issued its Memorandum Opinion and Order ordering a bond hearing pursuant to 8 U.S.C. § 1226(a) with the burden of proof on DHS to demonstrate Mr. Romero's risk of flight and danger to the community. *See* Order, at 10. The following day, DHS counsel electronically filed a copy of this Court's Order with the Louisiana Immigration Court and the Immigration Court scheduled a bond hearing for November 10, 2025 at 9:00am. *See* ECF No. 31-1, Declaration of Diana Yanguas Rosen in Support of Motion to Enforce, ¶¶ 4-5 [hereinafter "Second Rosen Decl."]. Over the weekend, NYLAG counsel filed two evidentiary submissions with the Immigration Court in support of Mr. Romero's release on bond. *See id.*, Ex. A, B.

The Louisiana Immigration Court held a bond hearing on November 10, 2025. *See id.*, ¶ 8. During that hearing, DHS counsel stated that the Immigration Court lacked jurisdiction to consider the bond request under *Matter of Yajure Hurtado*, 29 I&N Dec. 216, and claimed Mr. Romero's detention was governed by 8 U.S.C. § 1225(b). Additionally, counsel for DHS stated that Mr. Romero had not presented evidence that he had been admitted to the United States. DHS counsel made no representations regarding Mr. Romero's danger to the community or risk of flight. *See id.*, ¶ 12. Without allowing NYLAG counsel the opportunity to respond, the Immigration Judge stated that he was denying bond, as he lacked jurisdiction to consider the request. *See id.*, ¶ 13. Even after NYLAG counsel explained that a federal court had ordered the Immigration Court to hold a bond hearing pursuant to § 1226(a), the Immigration Judge simply stated that Mr. Romero had until December 10 to file an appeal with the Board of Immigration Appeals ("BIA"). *See id.*, ¶ 15. On the same day, in light of Respondents' failure to hold a bond

hearing consistent with this Court's order, Mr. Romero, through counsel, filed a Motion to Enforce with this Court.

Respondents responded to the Motion to Enforce on November 10, 2025, acknowledging the improper argument made by DHS at the bond hearing in violation of the Court's Order and stating that they were attempting to schedule a second, compliant bond hearing. *See* ECF No. 32. On November 12, 2025, a second bond hearing was scheduled for Mr. Romero for November 13, 2025 at 9:00am CST. *See* Exh. 1, Declaration of Diana Yanguas Rosen in Support of Amended Motion to Enforce, ¶ 5 [hereinafter "Third Rosen Decl."]. Mr. Romero's counsel re-submitted the twenty previously submitted letters of support from Mr. Romero's family and community to the Immigration Court, as well as two additional letters, ahead of the hearing. *Id.*, ¶ 6.

At the Immigration Court hearing on November 13, DHS again asserted that—in spite of and contrary to this Court's order—that Mr. Romero was rightfully detained pursuant to 8 U.S.C. § 1225(b), and that *Yajure Hurtado* barred Mr. Romero from eligibility for bond. *Id.*, ¶ 8. Notably, although pursuant to this Court's order DHS bore the burden of proof, DHS submitted zero documentary evidence in support of Mr. Romero's continued detention. *Id.*, ¶ 7. Instead, DHS argued that Mr. Romero was a flight risk because he entered the United States without inspection and has lived in the country for thirty years without reporting his presence to immigration authorities. *Id.*, ¶ 8.

The Immigration Judge granted a $6,000 bond and DHS reserved its right to appeal. *See id.*, Ex. A. In his oral decision, the Immigration Judge explained that he was setting a $6,000 bond to ameliorate any flight risk associated with Mr. Romero having been undocumented for many years. *Id.*, ¶ 9.  Immediately following the hearing, an employee of Envision Freedom Fund, a immigration bond fund based in New York City, submitted a request to pay Mr.

3

Romero's bond via the CeBONDS web platform. *Id.*, ¶ 11. That request was denied a few hours later, due to the fact that DHS had filed an automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2). *Id.*, ¶ 12; *id.*, Ex. B. Mr. Romero's counsel has not received any notice from Respondents concerning their invocation of the automatic stay or the grounds for reserving appeal of the Immigration Judge's bond decision. *Id.*, ¶ 13. In addition, Mr. Romero's final merits hearing in his removal proceedings has been scheduled for December 12, 2025, with all evidence due to the Immigration Court seven days prior. *Id.*, ¶ 15. As a result of the automatic stay, Mr. Romero will remain detained and forced to litigate his application for relief without full access to counsel, notwithstanding the Immigration Judge's order granting him bond; Mr. Romero's ability to pay that bond; and this Court's intention to ensure that Mr. Romero is offered the protections owed to him by the Fifth Amendment and the Immigration and Nationality Act.

**ARGUMENT**

I.    **Because Respondents Failed to Comply with this Court's November 6 Order, Mr. Romero Should Be Released.**

Pursuant to its equitable powers, this Court has broad authority to fashion a remedy to rectify non-compliance with its orders. *Berger v. Heckler*, 771 F.2d 1556, 1568-69 (2d Cir. 1985). Respondents have repeatedly failed to comply with this Court's order—first, by ignoring this Court's direction to hold bond hearing pursuant to 8 U.S.C. § 1226(a) at the November 10 hearing; and second, by invoking an automatic stay of the Immigration Court's bond grant at the second hearing after failing to meet their burden of proof. Respondents' invocation of the automatic stay thwarts this Court's order, violates Mr. Romero's due process rights, and is *ultra vires*. The remedy for the Respondents' repeated violations is Mr. Romero's immediate release on the $6,000 bond set by the Immigration Court.

4

**A. Respondents Flagrantly Violated this Court's Order at the November 10, 2025 Bond Hearing**

As set forth in greater detail in Mr. Romero's first Motion to Enforce, Respondents initially violated this Court's order by arguing for and failing to apply the proper legal standard at the November 10 bond hearing. *See Quituizaca v. Barr*, No. 20-CV-403 (LJV), 2021 WL 6797494, at *5 (W.D.N.Y. Jan. 5, 2021).

At that hearing, DHS counsel argued, in contravention of this Court's order, that Mr. Romero should not be granted bond because, pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216, Mr. Romero's detention is governed by 8 U.S.C. § 1225(b) and the Immigration Court lacked jurisdiction. *See* Second Rosen Decl. ¶ 12. Moreover, DHS *submitted no evidence* to meet its burden of proving dangerousness or flight risk. *Id.* Again, in spite of this Court's order, the Immigration Judge then declined to hold a hearing pursuant to 8 U.S.C. § 1226(a), finding incorrectly that he lacked jurisdiction. *See id.* ¶¶ 4, 7, 12-13.

After that initial hearing, Respondents then sought a second attempt to comply with this Court's order by scheduling a second bond hearing, during which DHS and the Immigration Court would presumably apply the proper legal standard. Respondents acknowledged the impropriety of DHS's actions at the first bond hearing in a letter filed with this Court. *See* ECF No. 32.

**B. Respondents Again Undermined This Court's Order by Invoking an Automatic Stay of Mr. Romero's Bond Pursuant to 8 C.F.R. § 1003.19(i)(2)**

Following the Immigration Judge's grant of a $6,000 bond for Mr. Romero at the second bond hearing, Respondents once again thwarted this Court's Order by invoking an automatic stay of the bond order pursuant to 8 C.F.R. § 1003.19(i)(2). The automatic stay regulation permits DHS to automatically stay a noncitizen's release on an immigration judge's bond order upon

5

filing a notice of intent to appeal on Form EOIR-43 with the immigration court. *See* § 1003.19(i)(2); *see also J.M.P. v. Arteta*, --- F.Supp.3d ---, 2025 WL 2984913, at *10-11 (S.D.N.Y. Oct. 23, 2025) (discussing legal history of automatic stay regulation, which was promulgated following the September 11, 2001 terrorist attacks and was described at the time by immigration authorities as "a limited measure"). Until recent months, the automatic stay provision was rarely employed; in 2021, it was invoked just twice. *See J.M.P.*, 2025 WL 2984913, at *11. "But as indicated by the dozens of court cases holding the automatic stay provision unconstitutional in the past few months, the automatic stay is apparently now being used with far more frequency." *Id.*

Respondents' invocation of the automatic stay provision to continue detaining Mr. Romero, a diabetic grandfather with no criminal history, is unconstitutional, *ultra vires*, and a violation of this Court's November 6 Order. Mr. Romero's continued detention as a result of the automatic stay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and is an *ultra vires* exercise of power delegated to the Attorney General, not DHS. Respondents cannot claim compliance with this Court's order for a burden-shifted bond hearing pursuant to 8 U.S.C. § 1226(a) when they have taken immediate action to thwart the immigration judge's decision. "The point of a bond hearing is not simply to go through the empty motions of a hearing, only for the bond applicant to remain in detention regardless of the immigration judge's decision." *J.M.P.*, 2025 WL 2984913, at *13; *see id.* ("A fair hearing is only 'meaningful' if the results of that hearing are respected, otherwise it is merely a formality with no legal significance. Respondents cannot withstand a procedural due process objection by arguing that due process is provided, then given no import." (quoting *Ashley v. Ridge*, 288 F.Supp.2d 662, 671 (D.N.J. Oct. 29, 2003))).

6

i.    **Mr. Romero's Detention Pursuant to the Automatic Stay Provision Violates Due Process**

The automatic stay deprives petitioners like Mr. Romero of liberty without due process of law. *See J.M.P.*, 2025 WL 2984913, at *14 n.20, 14 n.21 (collecting more than two dozen cases). Courts in the Second Circuit apply the *Mathews v. Eldridge* test to evaluate the adequacy of process in the immigration detention context. *See Chipantiza-Sisalema v. Francis*, 25 Civ. 5528 (AT), 2025 WL 1927931, at *2 (S.D.N.Y. July 13, 2025). "The Supreme Court in *Mathews* identified three factors bearing on the constitutional need for procedural protections: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). All three *Mathews* factors favor the conclusion that the automatic stay violates Mr. Romero's due process rights.

First, Mr. Romero invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker,* 978 F.3d 842, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004)). The conditions of Mr. Romero's detention, which are indistinguishable from criminal incarceration, only increase the significance of his private liberty interest. *See J.M.P.*, 2025 WL 2984913, at *16.[1] Mr. Romero "is experiencing all the deprivations of incarceration, including loss of contact with family and

---

[1] Mr. Romero's private interest is even stronger than that of the petitioner in *J.M.P.* The petitioner in that case was properly subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) based on his criminal history until that detention became unconstitutionally prolonged. *See J.M.P.*, 2025 WL 2984913, at *15. Mr. Romero, by contrast, has *never* been properly subject to mandatory detention, as this Court found he is discretionarily detained under § 1226(a). *See* Order, at 3-6.

7

friends, loss of income, lack of privacy, and restrictions on his movement." *Id.* As a result of his detention, he missed the birth of his second grandchild. *See* ECF No. 24. The private immigration detention facility where he is detained, Winn Correctional Center, is the subject of numerous investigations into its inhumane conditions. *See* The Marshall Project, Winn Correctional Center: A Curated Collection of Links, https://www.themarshallproject.org/records/3048-winn-correctional-center (last updated July 23, 2025).

The second *Mathews* factor is "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Black*, 103 F.4th at 152 (quoting *Mathews*, 424 U.S. at 335). District courts evaluating the automatic stay provision "have found a significant risk of erroneous deprivation . . . because the only detainees subject to the automatic stay are those whose detention an [immigration judge] has already determined to be unsupported by sufficient evidence." *Arcos v. Noem*, 4:25-cv-04599, 2025 WL 2856558, at *2 (S.D. Tex. Oct. 8, 2025); *see J.M.P*, 2025 WL 2984913, at *17.

At Mr. Romero's bond hearing, which occurred pursuant to this Court's Order, DHS bore the burden to prove by clear and convincing evidence that he was either a danger to the community or a flight risk. *See* Order, at 10. Despite carrying this burden, DHS filed no evidence with the Immigration Court ahead of either bond hearing and primarily argued that Mr. Romero was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), flouting this Court's order. *See* Second Rosen Decl., at ¶¶ 7, 12; Third Rosen Decl., at ¶¶ 7-8. DHS made no argument regarding Mr. Romero's dangerousness, nor could they, as he has no criminal history whatsoever. *See* Third Rosen Decl., at ¶ 8. The only argument on the merits raised by DHS was that Mr.

8

Romero is a flight risk because he has lived in the United States undocumented for thirty years without announcing his presence to immigration authorities. *See id.*, ¶ 8. DHS counsel did not address the twenty-two letters of support provided by Mr. Romero's family and community and neglected to engage with his argument that he had every incentive to appear in court to pursue his cancellation of removal application, which could lead to permanent residency. *See id.*, ¶¶ 8-9. Moreover, DHS counsel provided no explanation as to why setting a high bond or applying conditions of release such as electronic monitoring could not ameliorate this alleged flight risk.

The Immigration Judge considered the arguments of both parties at the adversarial bond hearing and determined that a bond of $6,000 would ameliorate any risk of flight related to Mr. Romero's prior entrance without inspection and undocumented residence in the United States. *See id.* ¶ 10; *id.*, Ex. A. This decision was in line with the reasoning of this Court in its November 6 Order: "On the present record, the petitioner's strong family ties, stable employment, and lack of criminal history weigh against any showing, by clear and convincing evidence, that he is a danger to the communities or a risk of flight." Order, at 8. By invoking the automatic stay, Respondents unilaterally reversed the Immigration Judge's decision to release Mr. Romero on bond, and it did so without providing any justification, let alone notice to Mr. Romero and opportunity to be heard.

"The automatic stay 'is effectively a unilateral automatic stay pending appeal as of right afforded to the losing party....' By 'conferring unreviewable discretionary authority in the [ ] prosecuting agency official,' the automatic stay creates a 'conflict of interest ... that makes erroneous deprivation not just a risk, but likely.'" *J.M.P.*, 2025 WL 2984913, at *17 (quoting *Herrera v. Knight*, --- F.Supp.3d ---, 2025 WL 2581792, at *10-11 (D. Nev. Sept. 5, 2025)). Mr. Romero's counsel only learned that Respondents had sought an automatic stay after Mr.

9

Romero's bond request payment was rejected with a note stating that DHS invoked the provision. *See* Third Rosen Decl., ¶ 12. No update was provided on the immigration court filing portal, and his counsel was never provided a copy for the Form EOIR-43 that invoked the stay. *See id.*, ¶ 13.

As this Court has previously stated, "the Government would likely fight an uphill battle" to prove by clear and convincing evidence that Mr. Romero should not be granted bond. *See* Order, at 9. Although Respondents resoundingly lost that uphill battle, they invoked the automatic stay to evade this Court's Order and the Immigration Judge's individualized consideration of Mr. Romero's circumstances. "Multiple courts have held that the automatic stay procedure creates an 'extraordinarily high' risk of erroneous deprivation of a noncitizen's liberty interest because 'the text of the regulation provides no identifiable standard,' and the regulation 'provides no discernable process to guide the relevant agency official's decision, other than it must be invoked pursuant to undefined DHS review procedures, and the vague requirement that an official must certify that the stay has evidentiary and legal support.'" *J.M.P.*, 2025 WL 2984913, at *18 (quoting *Vazquez v. Feeley*, 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *19 (D. Nev. Sept. 17, 2025)).

Finally, with respect to the third *Mathews* factor, while Respondents certainly have an interest in preventing danger to the community and ensuring non-citizens' appearance at future hearings, neither interest is advanced by invoking the automatic stay here. *See J.M.P.*, 2025 WL 2984913, at *21. Respondents have presented no argument whatsoever that Mr. Romero, a diabetic grandfather, is a danger to the community and based its entire flight risk argument at the second bond hearing on the fact that Mr. Romero is undocumented—a common characteristic of non-citizens subject to discretionary detention under § 1226(a). After holding an adversarial

10

hearing and making an individualized assessment, the Immigration Judge concluded that Mr. Romero presents no flight risk that cannot be ameliorated by a $6,000 bond. *See id.*; Third Rosen Decl., Ex. A. To the extent the Respondents disagree with this conclusion, they have not provided any justification for this disagreement, as it sought the automatic stay without any explanation.

In addition, in this case there are no "fiscal and administrative burdens that the additional or substitute procedural requirements would entail," because the bond hearing has already taken place. *See Hyppolite v. Noem,* 25-CV-4304 (NRM), 2025 WL 2829511, at *13 (E.D.N.Y. Oct. 6, 2025) (holding that the burden of continued deprivation still easily outweighed any countervailing fiscal or administrative burdens where the bond hearing had not yet been conducted). "By contrast, the fiscal and administrative burdens of keeping [Mr. Romero]—who [was found to not be a] flight risk nor a danger to the community — detained are extremely high." *Id.*

In sum, consideration of the *Mathews* factors clearly establishes that Mr. Romero's detention as the result of Respondents' invocation of the automatic stay violates due process.

> ii.      **Respondents' Invocation of the Automatic Stay Provision is Ultra Vires**

Respondents' invocation of the automatic stay provision effectively subjects Mr. Romero to ongoing detention despite the order of this Court that Mr. Romero receive a bond hearing pursuant to 8 U.S.C. § 1226(a), and that of the Immigration Court granting his release on a $6,000 bond. As such, DHS's application of the automatic stay provision is *ultra vires*, as it exceeds the authority conferred by Congress through the Immigration and Nationality Act and effectively eliminates the discretionary authority of the immigration judge in order to subject Mr.

11

Romero to mandatory detention. *See Leal-Hernandez v. Noem,* 1:25-cv- 02428-JRR, 2025 WL 2430025, at *14-15 (D. Md. Aug. 24, 2025).

As set forth above, this Court ordered Respondents to provide Mr. Romero with a bond hearing pursuant to DHS's *discretionary* authority to detain under § 1226(a). Pursuant to § 1226(a), the Immigration Judge acknowledged the discretionary nature of Mr. Romero's detention and granted him release on a $6,000 bond. By invoking the automatic stay to prolong Mr. Romero's detention, DHS renders the discretionary nature of Mr. Romero's detention and the Immigration Judge's decision to release him on bond "a nullity," effectively subjecting Mr. Romero to mandatory detention. *Leal-Hernandez*, 2025 WL 2430025, at *15. Thus, Respondents' invocation of the automatic stay is *ultra vires*.

### iii.    The Remedy for Respondents' Non-Compliance is Release

Respondents have had *two opportunities* to provide Mr. Romero with a bond hearing pursuant to § 1226(a) and they failed to do so, in violation of this Court's Order. Ordering Mr. Romero's release would be consistent with other district courts in this Circuit where there has been non-compliance with habeas orders. *See Grasso v. Norton*, 520 F.2d 27, 38 (2d Cir. 1975) (affirming district court's decision to enforce habeas writ and issue the final writ releasing petitioner from custody); *Quituizaca*, 2021 WL 6797494, at *8 (ordering petitioner's release on alternative conditions after finding the government's evidence did not demonstrate that it was highly probably that no combination of conditions of release would mitigate flight risk); *Thomas v. Searls*, 20-CV-6362-FPG, 2021 WL 358128, at *9 (W.D.N.Y. Jan. 4, 2021) (ordering the petitioner's release on alternative conditions after finding that government had not "demonstrated to anyone that it is highly probable that no condition or combination of conditions would suffice to serve its interest in minimizing risk of flight) (internal quotations and citations omitted);

*Fernandez Aguirre, v. Barr,* 19-CV-7048 (VEC), 2019 WL 4511933, at \*8 (S.D.N.Y. Sept. 18, 2019) (ordering petitioner's release after determining that immigration judge failed to comply with court order requiring application of the clear and convincing standard and consideration of alternatives to detention); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 234-35, 243-44 (W.D.N.Y. Jan. 16, 2019) (same); *Enoh v. Sessions*, 16-CV-85(LJV), 2017 WL 2080278, at \*10 (W.D.N.Y. May 15, 2017) (same).

Moreover, release is particularly appropriate here, where the Immigration Judge has already made a finding that DHS cannot meet their burden of demonstrating that Mr. Romero is a danger to the community or a flight risk, consistent with this Court's view of the record. Mr. Romero's release is now only prevented by DHS's invocation of an automatic stay. Release is appropriate as through this motion, Mr. Romero seeks only to have the orders of the Immigration Judge and this Court enforced.

## CONCLUSION

By the terms of this Court's November 6 Order, "the Government shall immediately release the petitioner." *See* Order, at 10. Respondents have had *two* opportunities to provide Mr. Romero with a bond hearing in compliance with this Court's order and have still failed to do so. Mr. Romero respectfully requests that the Court order his immediate release on the $6,000 bond set by the Immigration Court.

Dated: November 13, 2025

/s/ Diana Yanguas Rosen
Diana Yanguas Rosen, Esq.
Melissa Lim Chua, Esq.
New York Legal Assistance Group
100 Pearl St., 19th Fl.
New York, NY 10004
(212) 659-6044
drosen@nylag.org

*Pro Bono Counsel for Petitioner*

13

**CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that on this date, I filed this Motion to Enforce the Court's Order and all attachments using the CM/ECF system.

Dated: November 13, 2025

/s/ Diana Yanguas Rosen
Diana Yanguas Rosen, Esq.
Melissa Lim Chua, Esq.
New York Legal Assistance Group
100 Pearl St., 19th Fl.
New York, NY 10004
(212) 659-6044
drosen@nylag.org

*Pro Bono Counsel for Petitioner*